

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00132-CV

_____

CITY OF FOREST HILL AND RICHARD WINTERS, Appellants

V.

LINA MINO, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-341841-23

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

This appeal arises from the trial court's denial of a Rule 91a motion and plea to the jurisdiction[1] filed by Appellants the City of Forest Hill and Sergeant Richard Winters, an employee of the City's police department (FHPD). Appellants sought dismissal of the claims filed against them by Appellee Lina Mino, an officer with the Sansom Park Police Department, who sued after she was seriously injured during a training course hosted by FHPD in partnership with private entities. In three issues, Appellants argue that the Texas Tort Claims Act (TTCA) applies to the claims against them because the City's marketing, charging a fee for, and hosting the training course was a governmental function; that the trial court should have dismissed all claims against Sergeant Winters; and that to the extent that Officer Mino seeks damages beyond those authorized by the TTCA, the trial court was without jurisdiction over those claims.

We agree with Appellants that the City's actions regarding the training course were the performance of a governmental function and that the TTCA applies. Accordingly, we further agree with Appellants that the TTCA requires dismissal of the

---

[1]This motion did not assert any plea-to-the-jurisdiction grounds separate from the Rule 91a grounds; rather, the motion simply asserted that it "also constitute[d] a plea to the jurisdiction because the substance of this Rule 91a Motion challenges [the trial court's] jurisdiction." On appeal, Appellants do not argue that, even if they did not meet the standard for dismissal under Rule 91a, the trial court was required to dismiss Officer Mino's claims under the standards for pleas to the jurisdiction.

state-law tort claims against Sergeant Winters. However, the trial court correctly declined to dismiss the claims that Officer Mino brought against Sergeant Winters under 42 U.S.C. § 1983. Accordingly, we will reverse in part and affirm in part, and our holdings make it unnecessary for us to address Appellants' third issue.

## Background

Officer Mino alleged that on November 5, 2022, the City, FHPD, and two private entities conducted an active-shooter training course. The class was not limited to FHPD officers; it had been marketed to officers in other cities, and the organizers charged a fee for participants to attend the course. One of the private entities was not approved by the Texas Commission on Law Enforcement (TCOLE) to provide training, but the other private entity was, and the training class was marketed with a TCOLE course number. Johnson County Constable Paul Gaumond was hired as the course trainer, and he hired Valente Briones III as an assistant trainer. In the morning session, Gaumond instructed the participants that during the role-play part of the session, "they would be using simulation airsoft guns that were filled with Co2 rather than live ammunition."

During the afternoon role-play session, Sergeant Winters was given a handgun to use for the activity. The handgun belonged to Gaumond; Officer Mino alleged that the gun was handed to Sergeant Winters by Briones but that Briones had claimed that it had come from Gaumond. Officer Mino further alleged that none of the defendants had checked the handgun "to determine whether it was a real gun and whether it was

3

loaded with ammunition." Sergeant Winters drew and shot the firearm during the role-play, and the bullet struck Officer Mino in the left eye and exited out her left ear. She suffered the loss of her left eye and a brain injury.

Officer Mino sued the City, Sergeant Winters, Johnson County, Gaumond, Briones, the two private entities involved in the course, and others. She alleged that her claims against Sergeant Winters were brought against him "in both his individual and official capacity as a police officer" for the City. She asserted claims for common law negligence and gross negligence against Sergeant Winters, and she further alleged that Sergeant Winters and the City were liable under the TTCA because her injuries had been caused by the use or misuse of tangible personal property.

After Officer Mino filed her third amended petition, Appellants filed "[The City]'s & [Sergeant Winters's] Rule 91a Motion to Dismiss Baseless Cause of Action and [the City]'s Plea to the Jurisdiction" (the Motion), which sought dismissal of some of Officer Mino's claims on the ground that the claims had no basis in law or fact. As to the City, the Motion asserted that when Officer Mino was injured, the City was performing a governmental function because TTCA Section 101.0215(a)(1) designates "police protection and control" as a governmental function, and thus "to the extent [that Officer Mino] attempt[ed] to assert a claim based on the theory that the functions were proprietary, such claim fail[ed] as a matter of law and [had to] be

4

dismissed with prejudice."[2] As to Sergeant Winters, the Motion asserted that because Officer Mino's claims arose from the City's performance of a governmental function, the TTCA applied and mandated dismissal of any claims against Sergeant Winters.[3]

The hearing on the Motion was set for Monday, March 3, 2025. On February 28—the Friday before the Monday hearing—Officer Mino filed her "Fourth Amended Petition and Jury Demand." In that pleading, she added new claims against the City, Sergeant Winters, and others under 42 U.S.C. § 1983. After the hearing, the trial court denied the Motion.

**Standard of Review**

A trial court properly grants dismissal under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." Tex. R. Civ. P. 91a.1. "Whether the dismissal standard

---

[2]In a footnote in the Motion, the City asserted that FHPD is a department of the City and does not exist separately from the City, that the City was therefore the proper defendant—a position that Officer Mino has not disputed on appeal—and that the City was thus responding on its own behalf and on behalf of the FHPD. *See* Tex. Loc. Gov't Code Ann. § 341.003 (authorizing home rule municipality to establish police force). The Motion did not ask the trial court to dismiss the claims against FHPD or to take any other action on this basis of this assertion. The City makes the same statement in its brief.

[3]The Motion's conclusion asked the trial court to dismiss claims against Sergeant Winters in his individual capacity, not the claims against him in his official capacity. But elsewhere in the Motion, Appellants asserted that TTCA Section 101.106(e) required dismissal of all claims asserted against Sergeant Winters. As noted below, at that time, Officer Mino had asserted only state-law claims against Sergeant Winters.

5

is satisfied depends 'solely on the pleading of the cause of action.'" *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (quoting Tex. R. Civ. P. 91a.6). We review a trial court's Rule 91a order de novo "because the availability of a remedy under the facts alleged is a question of law and [because] the rule's factual-plausibility standard is akin to a legal-sufficiency review." *Id.* Likewise, "[w]hether a trial court has jurisdiction is a question of law subject to de novo review." *Ben Bolt-Palito Blanco Consol. I.S.D. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006) (italics omitted).

## Discussion

### I. The City was engaged in a governmental function.

Appellants first argue that the trial court erred by determining that the City was engaged in a proprietary function when the shooting occurred. This argument affects Appellants' other issues; if the City was engaged in a governmental function, then the TTCA applies to Officer Mino's tort claims against them, thereby giving the City governmental immunity except as waived in the Act, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021, 101.0215, and making the TTCA's damages limitations (issue three) and Section 101.106 (issue two) applicable. *See id.* §§ 101.023(c), 101.024, 101.106. We hold that the City was engaged in a governmental function and that the TTCA applies.

TTCA Section 101.0215 enumerates certain municipal functions as governmental and others as proprietary. The list of governmental functions includes "police . . . protection and control." *Id.* § 101.0215(a)(1).

6

However, "[c]onduct is not governmental merely because it touches upon a governmental function." *Tex. Bay Cherry Hill, L.P. v. City of Fort Worth*, 257 S.W.3d 379, 391 (Tex. App.—Fort Worth 2008, no pet.); *cf. USA Promlite Tech. Inc. v. City of Hidalgo*, 551 F. Supp. 3d 729, 734 (S.D. Tex. 2021). To argue that the function at issue in this case falls within police protection and control, Appellants direct us to multiple statutes addressing training for police officers. These statutes require peace officers to complete continuing education hours, more specifically require active-shooter training, require the comptroller to allocate money to be given to law-enforcement agencies for officer training, and require those agencies to report to the comptroller how that money was spent. *See* Tex. Occ. Code Ann. § 1701.157 (requiring the comptroller to allocate money to an education fund account for expenses related to continuing education and requiring law-enforcement agencies to report to the comptroller the training hours during the previous year that were funded by such money); *id.* § 1701.351 (requiring every peace officer to complete "at least 40 hours of continuing education programs once every 24 months" and providing that TCOLE "may suspend the license of a peace officer who fails to comply with this requirement"); *id.* § 1701.3525(a) (providing that an officer's continuing-education hours must include at least "16 hours of training on responding to an active shooter as developed by the Advanced Law Enforcement Rapid Response Training Center at

7

Texas State University—San Marcos[4]”); 37 Tex. Admin. Code § 218.5(a) (requiring each agency to maintain proof of its officers' continuing education hours). However, Officer Mino did not sue the City because it received money from the comptroller to send its officers to training, because the officers reported their hours spent on training, or because the City reported how it spent the money that it had received. The City is involved in this case because, according to Officer Mino's pleadings, it partnered with private entities to host the training, offered the training to officers from other jurisdictions (for a fee), and marketed the training to those officers.

As Officer Mino points out, although the statutes relied on by Appellants require police officers to undergo training, they do not require a city's police department to provide that training, and they do not require a police department to partner with a private provider—including a provider who, according to Officer Mino's pleadings, was not approved by TCOLE—to market to, charge a fee for, and host the training for officers outside of its own police force. Indeed, based on Officer Mino's pleadings, if an officer cannot receive training from his or her employer, private-training providers exist that can provide the required training. These statutes did not require the City to act as it did in this case. *Contra City of El Paso v.*

---

[4]Appellants emphasize that the training in this case was a course required under this section. However, although Officer Mino's pleadings alleged that the training course at which she was injured was an active-shooter training course, she did not state whether the course qualified to satisfy this section.

8

*Gomez-Parra*, 198 S.W.3d 364, 367 n.2 (Tex. App.—El Paso 2006) (noting that law-enforcement agencies are *required* by statute to auction seized vehicles and use the funds for a law-enforcement purpose and holding that conducting the auction was thus a governmental function).[5] None of the statutes relied on by Appellants compelled the City to act as it did in this case, and Appellants do not explain how any of these statutes required the City to partner with a private entity to offer this training to Officer Mino.

Nevertheless, we conclude that the training was sufficiently connected to police protection and control to constitute a governmental function. Simply put, a city employs peace officers for the purpose of providing police protection and control, and in order to employ licensed peace officers, a law-enforcement agency must ensure one way or another that its officers obtain the training that is required by law. One way to do so is to provide the training. Further, the State's provision of funding for officer training and the statute's providing that officers may lose their licenses when they do not meet training requirements indicate that the State considers adequate

---

[5]Appellants' brief discusses this case in support of their argument that police training is a governmental function, and their argument seems to assert that the *Gomez-Parra* court held that officer training is a governmental function. In that case, the court of appeals quoted the *municipality*'s argument that funds from police auctions must be used for "law[-]enforcement purposes" and that training is one such purpose, 198 S.W.3d at 367 n.2, but the court's holding did not turn on whether police training is a governmental function under the TTCA.

9

peace-officer training to be a matter of paramount importance in providing police protection.

Officer Mino pled that the training in this case had a TCOLE course number, meaning that this course would count towards peace officers' required training hours. Thus, this course was directly related to a requirement that law-enforcement officers must satisfy to retain their licenses, and the City's offering the course was directly related to and in furtherance of its ability to offer police protection and control. *See Tex. Bay Cherry Hill*, 257 S.W.3d at 392 (holding city's decision that was "closely related to" an enumerated governmental function and statements that were made "in furtherance of" that function fell within that function for purposes of TTCA).

That the City offered the training to officers outside of its police department does not weigh against our holding. The TTCA defines proprietary functions as "those functions that a municipality may, in its discretion, perform in the interest of *the inhabitants of the municipality*" and defines governmental functions as "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of *the general public.*" Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(a), (b) (emphasis added). The fact that the City was helping to train peace officers from other jurisdictions means that the training benefited other municipalities' ability to perform police protection and control, and thus the benefit of the training was not limited to the City's inhabitants. The City's partnering with a private entity is also not enough in this

case to make the function a proprietary one, and neither is the fact that a fee was charged for the course.[6] *See Doe v. City of Fort Worth*, 646 S.W.3d 889, 899 (Tex. App.—Fort Worth 2022, no pet.) (noting that a city "has the discretion to perform its governmental functions through various types of workers," including contractors and volunteers, and thus a municipality's working with a private person to perform a governmental function does not by itself change the nature of the function to a proprietary one); *Henry v. City of Angleton*, No. 01-13-00976-CV, 2014 WL 5465704, at *4 (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op.) (stating that a governmental entity's "ability to charge fees and make a profit does not in itself transform a governmental function into a proprietary function").

Officer Mino relies on *City of Dallas v. Ahrens* to support her arguments that the function in this case was proprietary because, among other things, the City was performing an activity that could have been provided by private persons and that the City's advertising, marketing, and hosting the active shooter training course were discretionary acts that were not essential or related to its officers attending the course. No. 10-23-00315-CV, 2024 WL 1573388, at *2 (Tex. App.—Waco Apr. 11, 2024, pet. denied). The Waco Court of Appeals explained how the claims in that case arose from

---

[6]Because of the limited record at this stage, we do not know if the City received any part of the fees collected.

the City of Dallas's handling of donations made to families of officers killed by a sniper:

> On July 7, 2016, five police officers were killed by a sniper during a demonstration in downtown Dallas, including [appellee Katrina] Ahrens' husband. The City [of Dallas] received an overwhelming volume of mail in response to the shooting. Some of that mail included checks and cash for the benefit of the families of the officers who were killed.
>
> In October 2016, [Dallas] contracted with a charitable organization, the Assist the Officer Foundation (ATO), to process that mail and disperse the donated funds to the appropriate recipients. . . .
>
> . . . [Dallas] agreed to deliver all donations to ATO[,] which would open the mail, record all donations, and deposit them in previously established bank accounts. . . .
>
> Believing that ATO has mishandled the funds, and because ATO has refused to release cash they claim to be legally entitled to, [Ahrens and her children] filed suit against ATO, the City, and others. . . .
>
> In its plea to the jurisdiction, [Dallas] contended that . . . the complained-of activities, its handling of mail sent to the Dallas Police Department, fall within the governmental function of police protection and control.

*Id.* at *1.

Dallas appealed from the trial court's denial of its plea to the jurisdiction. *Id.* Dallas argued that "its receipt and handling of the mail at issue [could not] be divorced from the tragic event that caused the mail to be sent in the first place, and at the time of the officers' deaths, each was on official duty providing police protection and control" and that "the tragedy triggered an obligation on [Dallas's] part to provide an ongoing official response, including processing the mail containing donations."

Dallas contended (1) that processing the mail was closely related to and a necessary part of providing police protection and control because the city "receive[ed] mail regarding ongoing police matters and complaints about police officers[ ] and [because] police officers need[ed] to act on that information" and (2) that its contracting with the charitable organization to handle the processing and disbursing of the donations allowed the charity to perform charitable functions while ensuring that Dallas "'stayed in its governmental lane.'" *Id.* at *3.

The Waco Court of Appeals rejected these arguments. Among other things, the court held that Dallas's "choices about how to receive and process the mail and donations at issue [in that case] d[id] not reflect typical police mail[-]processing activity"; that by entering into the agreement with the charity, Dallas had "extinguished its opportunity to rely on the argument that processing the mail at issue f[ell] in the category of police protection and control and [was] a governmental function"; and that "[p]rivatizing a portion of its mail[-]room procedures was not essential to [Dallas's] mail[-]room activities or the provision of police service." *Id.* For these reasons, the Waco court held that the act in that case was not a governmental function.

As in *Ahrens*, the City in this case partnered with a private entity for the activity at issue. However, farming out to a private entity the function of processing mail unrelated to ongoing police matters is fundamentally different from training police officers in policing functions. As stated, if a municipality provides police protection

13

and control by employing licensed peace officers, the municipality must ensure that those peace officers maintain their licenses by completing the training hours required by law. Although we do not know why the City offered the training in this case or how involved it was in the planning and operation of the training, we know from Officer Mino's pleadings that at least one of its officers (Sergeant Winters) attended, and thus the course was apparently open for attendance by the City's peace officers. Even if the City was not required to partner with a private entity to provide training, market it to other jurisdictions, or charge a fee to officers from those jurisdictions, the City's providing a TCOLE-approved training course to peace officers, including its own officers, was directly connected to and in furtherance of police protection and control.

We reiterate that, as argued by Officer Mino, not every act performed by a law-enforcement officer or agency will constitute "police protection and control" for purposes of the TTCA. Further, we have not set out a bright-line rule that any claim related to or touching on peace-officer training must always be a claim arising from the performance of a governmental function. However, in this case, the act alleged falls within the category of police protection and control. Consequently, under the specific facts of this case, the City's act was a governmental function, and the TTCA therefore applies to the state-law tort claims against it. We sustain Appellants' first issue.

14

Under this issue, Appellants do not seek dismissal of any claims against the City, but elsewhere in their brief, they argue that this court "must dismiss any claim against the City [that] is based on a theory that the functions were proprietary." Although Officer Mino argued in response to the Motion that the City had been engaged in a proprietary function—which, if true, would mean that the TTCA did not apply, Tex. Civ. Prac. & Rem. Code Ann. § 101.0215(b)—the only state-law tort claims for which she named the City as a defendant were claims under the TTCA. The City did not assert that the TTCA did not waive the City's immunity for those claims.

However, Officer Mino also asserted common law negligence and gross negligence claims against Sergeant Winters in his official capacity, and as we explain below, state-law tort claims against a governmental entity's employee are essentially claims against the governmental entity. As we explain under the next issue, the state-law tort claims asserted against Sergeant Winters in both his individual capacity and his official capacity must be dismissed.

## II. The TTCA claims against Winters must be dismissed.

In Appellants' second issue, they argue that the trial court erred by denying Sergeant Winters the statutory immunity asserted by him and on his behalf by the City under TTCA Section 101.106(a), (e), and (f). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a), (e), (f). We agree that the TTCA claims against Sergeant Winters must be dismissed, but the trial court correctly declined to dismiss the § 1983 claims against him. *See* 42 U.S.C. § 1983.

## A. The state-law tort claims

Under the TTCA, an employee of a governmental unit may not be sued in his or her individual capacity for acts the employee committed while acting within the scope of employment. *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 357 (Tex. 2013). Instead, the governmental entity is the proper defendant, *id.*, and thus if the plaintiff sues the employee in his or her official capacity, then on the employee's motion, the governmental entity must be substituted as the proper defendant, Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f).

Additionally, if a plaintiff sues a governmental entity, Section 101.106(a) bars any suit against the entity's employee in the employee's individual capacity. *Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014). In other words, under Section 101.106, a plaintiff must elect to sue *either* the employee in his or her individual capacity *or* the governmental entity, *Spriggs v. Villareal*, No. 14-24-00824-CV, 2025 WL 2450500, at *2 (Tex. App.—Houston [14th Dist.] Aug. 26, 2025, no pet.) (mem. op.), and for purposes of that section, a suit filed against the employee in his or her official capacity is a suit against the governmental entity. *Ngakoue*, 408 S.W.3d at 357.

A plaintiff must make this election "at the outset"; through Section 101.106, "the [Texas] Legislature intended to reduce the delay and expense associated with allowing plaintiffs to plead alternatively that the governmental unit is liable because its employee acted within the scope of his or her authority but, if not, that the employee acted independently and is individually liable." *Mission Consol. I.S.D. v. Garcia*,

16

253 S.W.3d 653, 657 (Tex. 2008) (noting that a plaintiff must "decide at the outset whether an employee acted independently and is thus solely liable[ ] or acted within the general scope of his or her employment such that the governmental unit is vicariously liable"). If the plaintiff sues both the employee and the governmental unit, then on the governmental entity's motion, the employee must be dismissed. *Spriggs*, 2025 WL 2450500, at *2 (citing Section 101.106(e)). The government entity's motion under Subsection (e) "effectively confirms [that] the employee was acting within the scope of employment and that the government, not the employee, is the proper party." *Ngakoue*, 408 S.W.3d at 358; *see also Spriggs*, 2025 WL 2450500, at *2. In summary, if the plaintiff sues the employee in the employee's official capacity, the employee may move to have the governmental entity substituted as the proper party, and if the plaintiff sues both the employee and the governmental entity, the governmental entity may move for dismissal of the claims against the employee.

Here, Officer Mino sued Sergeant Winters in his individual capacity. She also sued the City, both directly and by suing Sergeant Winters in his official capacity. *See Ngakoue*, 408 S.W.3d at 357. By filing the Motion, the City conceded that Sergeant Winters had been acting in his official capacity and that it was the proper defendant. *See id.* Under Section 101.106(e), the trial court was required to dismiss the state-law tort claims against Sergeant Winters. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).

Officer Mino argues that Sergeant Winters failed to meet his burden of proof to establish his right to dismissal under Section 101.106(f) because Sergeant Winters did not establish that he was acting in his official capacity and because the City has not admitted that it is vicariously liable for Sergeant Winters's conduct. However, even if Officer Mino were correct about Sergeant Winters's not meeting his burden, the City asserted in the Motion that the claims against Sergeant Winters should be dismissed under Subsection (e). As we have stated, the Motion constituted a concession by the City that it—not Sergeant Winters—is the proper defendant for Officer Mino's state-law tort claims. On the City's Motion, the trial court should have dismissed the state-law tort claims against Sergeant Winters. *See id.*

### B. The § 1983 claims

As for the § 1983 claims, such claims are not brought under or subject to the TTCA. *Enriquez v. Orihuela*, No. 14-18-00147-CV, 2019 WL 6872946, at *10 (Tex. App.—Houston [14th Dist.] Dec. 17, 2019, pet. denied) (mem. op.); *Swain v. Hutson*, No. 2-09-038-CV, 2009 WL 3246750, at *5–6 (Tex. App.—Fort Worth Oct. 8, 2009, pet. denied) (mem. op.). Appellants argue that nevertheless, because Officer Mino did not file her Fourth Amended Petition adding those claims at least three days before the Motion's hearing, the trial court could not consider the Fourth Amended Petition and had to dismiss all the claims against Sergeant Winters, including the § 1983 claims.

Rule 91a's purpose is to allow a party to obtain an early and quick dismissal of claims that have no basis in law or fact. *In re Joel Kelley Ints., Inc.*, No. 05-19-00559-CV,

18

2019 WL 2521725, at *1 (Tex. App.—Dallas June 19, 2019, orig. proceeding) (mem. op.); *HMT Tank Serv. LLC v. Am. Tank & Vessel, Inc.*, 565 S.W.3d 799, 805 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Because Rule 91a provides a harsh remedy, it must be strictly construed and narrowly applied. *Davidson v. Heine*, No. 08-24-00035-CV, 2025 WL 1919336, at *5 (Tex. App.—El Paso July 11, 2025, pet. filed) (mem. op.); *Galindo v. Peterson*, No. 02-23-00268-CV, 2024 WL 1792377, at *5 (Tex. App.—Fort Worth Apr. 25, 2024, pet. denied) (mem. op.).

The rule does not contemplate dismissal of a cause of action that was not challenged by the movant. A party seeking dismissal under Rule 91a must file a motion that "identif[ies] *each cause of action* to which it is addressed" and that "state[s] specifically the reasons *the cause of action* has no basis in law, no basis in fact, or both." Tex. R. Civ. P. 91a.2 (emphasis added). The movant must file the motion "within 60 days after the first pleading containing *the challenged cause of action* is served on the movant." Tex. R. Civ. P. 91a.3 (emphasis added). The trial court may not rule on the motion "if, at least 3 days before the date of the hearing, the respondent files a nonsuit of *the challenged cause of action*." Tex. R. Civ. P. 91a.5(a) (emphasis added). The nonmovant may amend "*the challenged cause of action*," but only if done "at least 3 days before the date of the hearing." Tex. R. Civ. P. 91a.5(b) (stating that movant may file an amended motion if nonmovant "amends *the challenged cause of action* at least 3 days before" the hearing date) (emphasis added), (c) (providing that court must not consider amendment not done in accordance with rule). In other words, the pleading

19

considered by the trial court in determining the baselessness of "the challenged cause of action" is the live pleading at the time of the Rule 91a motion's filing or any amendment of that challenged cause of action that is filed at least three days before the hearing. Tex. R. Civ. P. 91a.5.

"Except as required by 91a.7 [permitting attorney's fee evidence], the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of *the cause of action*, together with any pleading exhibits permitted by Rule 59." Tex. R. Civ. P. 91a.6. "[T]he court may award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to *the challenged cause of action* in the trial court." Tex. R. Civ. P. 91a.7 (emphasis added).

Considering the rule's purpose to allow a movant to obtain dismissal of baseless claims identified by the movant on the grounds set out by the movant, construing the rule narrowly in light of that purpose, and further considering the rule's focus on "the challenged cause of action,"[7] we conclude that Sergeant Winters was not entitled to dismissal of causes of action not challenged in the Motion. The § 1983 claims are not claims under the TTCA and were not identified or addressed by

---

[7]*C.f.*, *In re Com. Credit Grp. Inc.*, No. 05-21-00115-CV, 2021 WL 1884657, at *3 & n.2 (Tex. App.—Dallas May 11, 2021, orig. proceeding [mand. denied]) (mem. op.) (holding that even if the court considered the plaintiff's amended petition, the Rule 91a motion's grounds applied equally to the claims in the amended filing).

the Motion, and the arguments that Appellants raised in their Motion do not apply to the § 1983 claims.[8]

Appellants cite four cases to argue that courts of appeals "uniformly recognize that an untimely amendment cannot be considered by the trial court when it rules on a Motion to Dismiss pursuant to Rule 91a." In each case, the court decided whether to apply the rule—generally applicable in the plea-to-the-jurisdiction context—that a plaintiff should be given the opportunity to cure after a court's determination that their pleadings are jurisdictionally defective. *See City of Houston v. State Farm Mut. Auto. Ins.*, 712 S.W.3d 707, 717 & n.10 (Tex. App.—Houston [14th Dist.] 2025, no pet.) (noting general rule and that appellee had amended its petition in response to the Rule 91a motion and holding that because appellee had already had an opportunity to amend, it was not entitled to another); *Hall v. Mansfield I.S.D.*, No. 02-24-00201-CV, 2024 WL 5162468, at *6 n.7 (Tex. App.—Fort Worth Dec. 19, 2024, no pet.) (mem. op.) (holding that Rule 91a does not require trial court to give plaintiffs who stand on their pleadings the opportunity to amend after the court finds the pleadings defective); *Teel v. Autonation Motors, LLC*, No. 02-20-00419-CV, 2022 WL 123217, at *4 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) (noting that plaintiff could have

---

[8]The record and the parties' briefs do not reflect whether Officer Mino's Fourth Amended Petition was untimely under some other rule, and we do not address that question. We hold only that the trial court did not err by not dismissing the § 1983 claims based on the Motion.

21

amended his petition to address the Rule 91a motion and citing *Dailey v. Thorpe* for the proposition that a plaintiff is not entitled to an opportunity to amend "after the fact"); *Dailey v. Thorpe*, 445 S.W.3d 785, 788–89 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (noting that a nonmovant may choose to nonsuit or amend *the challenged cause of action* within the time period set out in Rule 91a.5 and that the rule does not require the trial court to give the opportunity to replead once the court finds the pleadings defective).

None of those cases addressed a situation in which the plaintiff filed an amended pleading *before* the trial court's ruling on the motion and in which the amendment added a *new* cause of action. Accordingly, these cases do not address the circumstances of this case.

In our research, we identified two Dallas cases in which the plaintiff amended or attempted to amend pleadings to add a new claim. However, as we explain, we decline to follow those cases.

First, in *Commercial Credit Group*, the plaintiff sought leave to amend its pleadings a week after the Rule 91a hearing. 2021 WL 1884657, at *3 & n.2. The Dallas Court of Appeals noted that the record did not reflect that an amended petition had been timely filed before the hearing or that leave had been granted to file the amended petition after the hearing. *Id.* at *5 & n.4. The court of appeals stated that the proposed amendment was untimely because it was filed a week after the hearing, *id.* at *3 n.2, but the court nevertheless concluded in a footnote that the

motion's grounds applied equally to the proposed amended petition, and thus the result would be the same even if the court considered it,[9] *id.* at *5 n.4. The court did not discuss the effect of the "challenged cause of action" language in the rule.

In *Odam v. Texans Credit Union*, the amended petition was filed before the hearing on the Rule 91a motion, and the Dallas court addressed the trial court's finding that the pro se plaintiff's amendment was untimely. No. 05-16-00077-CV, 2017 WL 3634274, at *2, *5 (Tex. App.—Dallas Aug. 24, 2017, no pet.) (mem. op.). The plaintiff had filed his amended pleading the day before the hearing, and on appeal, the plaintiff argued among other things that the trial court should have considered his amended pleading because it did not add new claims—a statement that

---

[9]The plaintiff sued for fraudulent inducement and other claims regarding the purchase of a trailer, which had been incorrectly represented as a 2010 Cozad. *Com. Credit Grp.*, 2021 WL 1884657, at *1. At some point after the purchase, the plaintiff had signed releases of its claims, but it nevertheless sued for fraudulent inducement and other claims based on the alleged misrepresentations. *Id.* at *1–2. The defendant filed a Rule 91a motion on the ground that the plaintiff's own pleadings had asserted that the contracts containing the releases were valid and enforceable contracts. *Id.* at *3. The plaintiff argued in its response that the releases had been procured by fraud, but it did not amend its petition to include that allegation. *Id.* A week after the Rule 91a hearing, the plaintiff sought leave to amend its petition to plead fraud in the inducement of the releases. *Id.* The court of appeals noted that all of the plaintiff's claims, even the proposed amended claims, were predicated on the discovery that the trailer was not a Cozad, and the court stated that the pleadings demonstrated that the plaintiff had "released all claims arising out of this discovery and did so in two successive transactions." *Id.* at *5 n.4. In other words, the court of appeals concluded that the proposed amendment was addressed by the grounds in the Rule 91a motion.

23

the court of appeals apparently did not agree with; elsewhere in the opinion,[10] the court indicated that the amended petition had included new claims. *Id.* at *1–2, *4. Without addressing Odam's characterization of his amended pleading, the Dallas court held that Odam's attempted amendment came too late. As in *Commercial Credit Group*, the court did not discuss the "challenged cause of action" language in the rule or what affect, if any, it had on the court's holding. *Id.* at *5.

We are not bound by opinions from the other courts of appeals. *See Raymax Mgmt., L.P. v. SBC Tower Holdings LLC*, No. 02-16-00013-CV, 2017 WL 3821897, at *1 n.4 (Tex. App.—Fort Worth Aug. 31, 2017, pet. denied) (mem. op. on reh'g). Further, as we noted, neither case reckons with the "challenged cause of action" language in the rule. For these reasons, we do not find these cases to be dispositive here.

We apply the plain meaning of Rule 91a's words, and we must give effect to every word and phrase because each "is presumed to have been intentionally used with a meaning and a purpose." *Ft. Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018). Thus, we must presume that the rule's drafters intended the repeated references to "challenged cause of action" to have a purpose, and we may not read those words out of the rule. *See id.*; *see also* Tex. Sup. Ct. Order, Misc. Docket

---

[10]The opinion stated that the plaintiff had originally sued for negligence and that his amended petition added claims for negligence (presumably different from those already pled) and fraudulent accounting. *Odam*, 2017 WL 3634274, at *1–2.

No. 13-9022 (Feb. 12, 2013) (adopting Rule 91a to implement the legislature's directive in Tex. Gov't. Code Ann. § 22.004(g)). Moreover, our reading of the rule does not conflict with the rule's purpose of allowing a movant to obtain quick dismissal of baseless claims on grounds raised in a motion. Here, Appellants sought dismissal of the state-law tort claims against Sergeant Winters, and they have obtained that result.

Because the trial court erred by denying the Motion as to the state-law tort claims against Sergeant Winters—in both his official and individual capacities—but did not err by denying it as to the § 1983 claims, we sustain Appellants' second issue in part and overrule it in part. Thus, we will dismiss all the state-law tort claims against Sergeant Winters in both his official and individual capacities, but we affirm the trial court's order denying dismissal as to the § 1983 claims against him. However, the trial court correctly denied the Motion as to the TTCA and § 1983 claims asserted directly against the City.[11]

---

[11]Appellants' briefing discusses only the § 1983 claims asserted against Sergeant Winters. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035–36 (1978) (noting that municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief" when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers").

### III. We need not address Appellants' third issue.

In Appellants' third issue, they argue that the trial court erred by denying their jurisdictional challenge to Officer Mino's assertion that the City was performing a proprietary function because that determination "operates to deprive the City of governmental immunity to some of Ofc. Mino's claims [that] are beyond the jurisdictionally limited partial waiver of the [TTCA]." Under this issue in their reply brief, Appellants cited various cases addressing contract claims against governmental entities and, in their reply brief, *Gulf Coast Center v. Curry*, 658 S.W.3d 281, 283 (Tex. 2022), to argue that to the extent that Officer Mino seeks damages not authorized under the TTCA against the City—by way of her claims against Sergeant Winters in his official capacity—the trial court had no subject-matter jurisdiction over the claims. Officer Mino, also citing *Curry*, asserts in response that Appellants' argument has no application at this stage of the proceedings because it relates to immunity from liability rather than immunity from suit. We have already held that the TTCA applies to Officer Mino's state-law tort claims and that, other than the § 1983 claims, the claims against Sergeant Winters must be dismissed. Because those holdings are dispositive of this issue, we need not address it. *See* Tex. R. App. P. 47.1.

### Conclusion

Having sustained Appellants' first issue and part of their second issue, we reverse the trial court's denial of the Motion as to the state-law tort claims against Sergeant Winters, and we render judgment dismissing those claims. We affirm the trial

court's denial of the Motion as to the claims for which the City is the named defendant. We remand for further proceedings consistent with this opinion.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  December 4, 2025